## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | Case No.: |
| LUIS CORONA a/k/a LUIS CORONA-VEGA ) | |
| d/b/a "CORONA CONSTRUCTION" and RING ) | |
| CONSTRUCTION, INC. ) | |
| ) | |
| *Defendants.* ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, Scottsdale Insurance Company ("Scottsdale"), by its undersigned counsel,

Weber Gallagher Simpson Stapleton Fires & Newby LLP, for its Complaint for Declaratory

Judgment and Other Relief against Defendants, Luis Corona a/k/a Luis Corona-Vega d/b/a

"Corona Construction" ("Corona") and Ring Construction, Inc. ("Ring"), respectfully alleges as

follows:

## NATURE OF ACTION

1.      This is an insurance coverage action seeking declaratory relief pursuant to the

Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules

of Civil Procedure. Specifically, Scottsdale seeks a determination of the parties' rights and

obligations under policies containing commercial general liability coverage that were issued to

"Corona Construction Candelario Corona /DBA" ("Candelario," where appropriate), which were

in effect from August 30, 2013 to August 30, 2014 and August 30, 2014 to January 17, 2015

(cancelled) ("Policies"), respectfully, as to the matters captioned *Axis FC, LLC v. Flaherty &

Collins Construction, Inc. and CSO Architects, Inc.*, 01-22-0000-8864, pending before the

American Arbitration Association ("Underlying Arbitration") and *Flaherty & Collins Construction, Inc. v. S.A. Boyce Corporation, Henry Schwartz, et al,* 49D04-2206-PL-018662, pending in the Superior Court of Marion County, Indiana ("Underlying Action").

2.      Among other defenses, Scottsdale does not owe a duty to defend or indemnify Corona in the Underlying Action because "property damage" did not occur during the Scottsdale policy periods and because Corona is not an insured under the Policies.  Similarly, Scottsdale does not owe a duty to defend or indemnify Ring in the Underlying Arbitration because the "property damage" did not occur during the policy periods and because Ring is not an additional insured under the Policies.

## PARTIES

3.      Scottsdale is an Ohio corporation with its principal place of business in Scottsdale, Arizona.

4.      Upon information and belief, Corona is an individual who is a citizen of Indiana.

5.      Upon information and belief, Ring is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) because Corona resides in Indianapolis, Indiana, Ring is an Indiana corporation with its principal place of

business in Indianapolis, Indiana and the conduct at issue giving rise to the underlying lawsuit

took place in Indianapolis, Indiana.

## THE UNDERLYING ARBITRATION AND UNDERLYING ACTION

8.     The dispute arises out of alleged construction defects at Axis at Block 400, a

mixed-use project located at 401 North Senate Ave., Indianapolis, Marion County, Indiana

46204 (the "Project"). The central issue involves alleged design and construction defects in the

apartment building's balconies.

9.     The owner, Axis FC, LLC ("Axis"), initiated the Underlying Arbitration against

the general contractor, Flaherty & Collins Construction, Inc. ("F&C"), and the architect, CSO

Architects, Inc. In turn, F&C asserted third-party claims in the Underlying Arbitration against

those subcontractors whose subcontracts contained arbitration clauses, including Ring.  Corona

is not a party to the Underlying Arbitration.

10.     In addition, F&C filed the Underlying Action against those subcontractors whose

subcontracts did not contain an arbitration clause, including Corona.  Ring is not a party to the

Underlying Action.

### A.     Underlying Arbitration

11.     In its Specification of Claims in the Underlying Arbitration dated February 28,

2023, Axis alleged that its investigation into the damage at the Project has uncovered significant

property damage to the building envelope, allegedly requiring repairs to all or nearly all of the

balconies, as well as to the roof and to the building façade adjacent to the balconies.

12.     On December 21, 2023, Axis submitted a Supplemental Specification of Claims

alleging "F&C substantially completed construction of the Project in or around 2015." A true

and correct copy of Axis' Supplement Specification of Claims, without exhibits, is attached hereto as **Exhibit A**.

13.     Axis further alleges "[i]n or around June 2020, Axis discovered property damage at the Project" when "a property manager for the Project noticed that a balcony in a residential unit had dropped one-half an inch."  Ex. A at ¶13.

14.     Axis claims that it notified F&C and hired consultants to investigate the dropped balcony at the Project. F&C participated in the investigation into the cause and scope of the damage. As noted above in paragraph 11, the property damage will require repairs to nearly all of the balconies, the roof and the building façade adjacent to the balconies.

15.     The Project allegedly features a variety of balcony types. Axis alleges the "Standard Balcony" is used in many of the Project's residential units, in which the balconies are cantilevered from the building by extending wood joists. Other balconies are referred to as "Wrap-Around" or "Angled" balconies and are positioned at the corners of the building (collectively, the "Corner Balconies"). Axis claims that its investigation has uncovered structural failures in the Project's Standard Balconies and Corner Balconies. Specifically, Axis alleges the wood components of these balconies have exhibited various states of distress and failure, including defects such as splitting and decay and some balconies have additionally exhibited signs of structural displacement.

16.     Water intrusion is allegedly causing the wood structural members of the Standard Balconies to rot.  Axis claims that water intrusion is also causing damage to the wood components of the Corner Balconies, the Project's roof, and other portions of the façade. Further, Axis alleged the water intrusion is the result of various construction and/or design defects uncovered throughout the building envelope and balconies.

4

17.     In Count I, Axis alleges a breach of contract claim against F&C, seeking costs, damages, and expenses to remedy existing damage and to prevent further damage caused by water intrusion at the Project. Axis claims that it has already incurred costs in the amount of $2.5 million to repair 33 of the Standard Balconies and damages continue to accrue.  In Count II, Axis alleges an indemnification claim against F&C, seeking indemnification for damages and reimbursement of all expenses, including attorneys' fees.

18.     On May 22, 2023, F&C submitted an Amended Specification Of Claims And Defenses in the Underlying Arbitration as to Ring and other parties. A true and correct copy of the Amended Specification of Claims and Defenses, without exhibits, is attached hereto as **Exhibit B.**

19.     F&C alleges that, as general contractor, it entered into subcontract agreements with the Subcontractors to perform work on the Project.

20.     F&C claims that "Ring entered into certain sub-subcontract agreements with Ring's Sub-Subcontractors to 'furnish all tools, equipment, supplies, supervision, labor, skill and instrumentalities and to perform all work necessary or incidentally required for that part of the construction of [the] Project' as set forth in each of Ring's subcontract agreements with each Ring Sub-Subcontractor." Ex. B at ¶8.

21.     Further, F&C alleges that "[o]n March 6, 2015, the Project reached substantial completion" and on "November 17, 2015, the Project's final certificate of occupancy was obtained." Ex. B at ¶¶12, 13.  F&C claims that since the certificate of occupancy was obtained, the Project has served as a fully functioning apartment complex. The Amended Specification Of Claims And Defenses asserts that on July 21, 2020, Axis sent F&C a letter placing F&C on

notice of alleged construction defects regarding certain Balcony damage at the Project ("Notice Letter").

22.     Since the Notice Letter, F&C claims that it has conducted investigations into the allegations of construction defects at the Project, including but not limited to, those alleged in the Notice Letter. Further, F&C allegedly hired consultants to conduct a series of inspections and investigations.  While F&C denies Axis's allegations of construction defects contained in the Notice Letter, it claims that if any of Axis's allegations against F&C have merit, then all the Arbitration Parties and Lawsuit Parties are liable to F&C for construction defects and resulting damage at the Project.

23.     In Count I, F&C asserts a claim against Ring alleging that, pursuant to the Subcontract Agreement, Ring was required to perform: (a) carpentry; (b) installation of framing materials; (c) exterior trim and associated framing; (d) exterior windows and doors; (e) accessories including rough hardware, sill sealer, flashing (including for doors and windows) and construction adhesive; (f) installation of wall panels; (g) installation of exterior roof and sheathing; (h) installation of all balconies and decks; (i) installation of exterior doors and windows to meet plans and manufacturers installation requirements; (j) installation of all exterior doors and windows per manufacturer's instructions, including flashing and taping of windows and doors, if required; and (k) setting of all exterior doors in an approved sealant bed.

24.     F&C claims it has determined that Ring's work on the Project caused the following defects (the "Ring Defects"): (a) widespread defects related to installation of the WRB, siding and associated trim, doors, and associated flashings; (b) on exterior walls, horizontal extruded metal trim components were not integrated or lapped into the WRB as required per plans and manufacturer instructions; (c) at Balconies where cement board siding

6

adjoined the Balcony concrete walking surface, there was a lack of the required vertical separation between siding panels and concrete topping; (d) at some inside wall corners above Balconies, vertical trim pieces were discontiguous and/or not flashed, and extended behind concrete topping slabs; (e) at some Balconies, horizontal metal trim pieces on adjoining perpendicular exterior walls were terminated behind the Balcony finish materials without any flashing or vertical trim pieces (installation in this configuration directed water behind finish materials and directly onto unprotected wood balcony framing); (f) at the elevated Balconies, the WRB was not contiguous across the exterior sheathing hidden behind/within the Balcony; (g) at some Balcony doors, sealant below the threshold was missing, incomplete, or located too far to the exterior to prevent water that leaked through the door frame assembly from reaching wood framing; (h) above most Balcony door/window assemblies, the WRB was not taped and was reverse-lapped with the door/window head flashing; (i) flashing was missing behind butt jointed cement board plank siding; (j) dryer vent penetrations were typically unsealed such that gaps existed around the perimeter of the vent pipes at their interface with the WRB; (k) there was no WRB or waterproofing layer on the exterior surface of some glue-laminated Balcony beams; and (l) at Balcony half-wall railings, the WRB was not wrapped over the top of the railing, and/or not taped/sealed, and/or installed short of the exterior wall WRB in various locations.

25.     F&C also alleges that the Ring Defects caused other damage to the Project, including but not limited to improper water intrusion to multiple areas causing deterioration and wood rot to framing, sheathing, and interior finishes. F&C alleges Ring breached the Ring Subcontract with F&C, as well as its other contractual and/or common law duties by, among other things, failing to perform its work pursuant to the Ring Subcontract in a skillful, careful, diligent, and workmanlike manner, and failing to use reasonable care in the course and

performance of its work.  It further alleges that Axis's claims against F&C "arise out of or relate to [. . .] the acts, errors, omissions, negligence or willful misconduct of [Ring], its Sub-Subcontractors or any other persons or entities for whom [Ring] is responsible[.]"  Therefore, F&C claims that Ring must indemnify, defend, and hold F&C harmless against Axis's claims in this matter pursuant to Section 10.1 of the Ring Sub-Subcontract and it seeks recovery of its attorneys' fees and expenses and its damages that are to be determined.

## B.     Underlying Action

26.     F&C filed the Underlying Action against several subcontractors not parties to the Underlying Arbitration, including "Luis Corona, individually and d/b/a Corona Construction."  A true and correct copy of the Complaint, without exhibits, is attached hereto as **Exhibit C**.

27.     In the Complaint, F&C alleges that it entered into a Prime Contract with Axis to serve as the general contractor for the Project.  F&C claims that on May 15, 2013, Ring entered into a subcontract agreement with F&C.  In turn, Ring entered into several subcontract agreements with several sub-subcontractors, including Corona.

28.     The Complaint alleges that September 8, 2014 was the Project's first substantial completion date and that the final certificate of occupancy was issued on November 17, 2015. F&C alleges in the Complaint that Axis sent a notice letter and initiated an arbitration proceeding concerning construction defects at the Project.  F&C asserts that if any of the allegations against F&C have merit, the Ring sub-subcontractors on the Project are liable to F&C.

29.     Count I is not directed at Corona.  Count II alleges negligence against all Defendants, including Corona, because they breached their contractual and/or common law duties to use reasonable care in the course and performance of their work.  F&C seeks damages

for the Defendants negligence, including actual damages, consequential damages, prejudgment interest and costs.

### C.      Ring Sub-Subcontract Agreement With Corona

30.      On October 31, 2013, Ring entered into a Sub-Subcontract Agreement with "Corona Construction" for the Project signed by "Luis Corona, President" on January 13, 2014. A true and correct copy of the Sub-Subcontract Agreement is attached hereto as **Exhibit D**.

31.      The scope of work included installation of wood framing and rough carpentry, installation of structural beams, installation of building wrap (Tyvek), installation of exterior siding & trim, installation of wood nail strips, and all exterior doors and windows.

32.      Article 7 of the Sub-Subcontract Agreement, Insurance, required Corona to "purchase, obtain, effect, and maintain" contractors liability insurance and that Ring "shall be named as an additional insured rider to the required policies."  It also required Corona to have "property damage limits of at least $ 1,000,000 for each occurrence and $ 1,000,000 total."

33.      Article 8 of the Sub-Subcontract Agreement, Indemnification, provided:

**Article 8.  Indemnification**

**Section 8.01**.  The Subcontractor shall indemnify, defend and hold Contractor and Owner harmless from and against any and all claims, losses, costs, debts, demands, damages including but not limited to attorney fees, pertaining to the performance of the Agreement and involving personal injury, sickness, disease, death or property damage, including loss of use of property resulting there from but not damage to the Work itself, but only to the extend caused in whole or in part by negligent acts of omissions of the Subcontractor, or any of the Subcontractor's subcontractors, suppliers, manufacturers, or other persons or entities for whose acts the Subcontractor may be liable. This indemnification agreement is binding on the Subcontractor to the fullest extent permitted by law, regardless of whether any or all of the persons and entities indemnify hereunder are responsible in part for the claims, damages, losses, or expenses or which the subcontractor is obligated to provide indemnification. This indemnification provision does not negate,

abridge or reduce any other rights or obligations of the persons and entities described herein with the respect to indemnity.

### D.     Other Information

34.     Upon information and belief, Corona worked on the Project from September 2013 until July 2014.

35.     Upon information and belief, the Named Insured on the Scottsdale Policies, Candelario Corona, was not involved in the Project and did not perform any work.

36.     An audit was conducted of Candelario's business for the period of September 1, 2013 to September 1, 2014. Corona was not identified as an employee of Candelario in the audit report.

37.     Upon information and belief, Ring's work on the Project began in August 2013 and was completed on February 13, 2015.

38.     Prior to litigation, Ring provided first notice of the defective work at the Project to Corona in correspondence dated January 12, 2021. Ring demanded that Corona indemnify it. Through separate correspondence of the same date, Ring asserted that it was an additional insured under the Scottsdale Policies and tender its defense.

39.     Scottdale denied Ring's defense tender.

40.     In correspondence dated September 9, 2022, Scottsdale agreed to defend Corona in the Underlying Action pursuant to a reservation of rights.

41.     Through separate correspondence dated August 30, 2024, Scottsdale supplemented its declination letter to Ring and its reservation of rights letter to Corona.

### <u>THE POLICIES</u>

42.     Scottsdale issued Policies numbered CPS1850338 and CPS2043865 providing commercial general liability coverage to "Corona Construction Candelario Corona /DBA."  The

10

Policies were in effect from August 30, 2013 to August 30, 2014 and August 30, 2014 to January 17, 2015, respectively.  The latter policy was cancelled effective January 17, 2015 for non-payment of premium.  The Polices are attached hereto as **Exhibits E** and **F**.

      43.    The Policies provide commercial general liability coverage on form CG 00 01 04 13.  The Insuring Agreement in each Policy provides in pertinent part:

    COMMERCIAL GENERAL LIABILITY COVERAGE FORM

    Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

    Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

    The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

    Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**    **Insuring Agreement**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

            **(1)**    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.**    This insurance applies to "bodily injury" and "property damage" only if:

**(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\*\*\*

44.    The "Who Is An Insured" section provides in pertinent part:

**SECTION II – WHO IS AN INSURED**

**1.**    If you are designated in the Declarations as:

**a.**    An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

\*\*\*

**2.**    Each of the following is also an insured:

12

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

13

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

\*\*\*

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

\*\*\*

45.     The Policies contain the following pertinent definitions:

**SECTION V – DEFINITIONS**

\*\*\*

**5.**     "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\*\*\*

**10.**     "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\*\*\*

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**17.**     "Property damage" means:

**a.**     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

14

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*** 

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

*** 

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

15

(2)    The providing of or failure to provide warnings or instructions.

***

46.    The Policies contain the following endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – OWNERS, LESSEES OR
CONTRACTORS – AUTOMATIC STATUS WHEN
REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.    **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.    Your acts or omissions; or

2.    The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

1.    Only applies to the extent permitted by law; and

2.    Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

B.    With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

16

1.      "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

        a.      The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        b.      Supervisory, inspection, architectural or engineering activities.

This exclusions applies even if the claims against any insured alleged negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

2.      "Bodily injury" or "property damage" occurring after:

        a.      All work including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

        b.      That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

C.      With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

1.      Required by the contract or agreement you have entered into with the additional insured;

2.      Available under the applicable Limits of Insurance shown in the Declarations.

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

17

## COUNT I
### (No "Property Damage" During Policy Periods)

47.     Scottsdale incorporates by reference Paragraphs 1 to 46 as if fully set forth herein.

48.     The Policies require "property damage" to occur during the policy periods.

49.     The Policies were in effect from August 30, 2013 to August 30, 2014 and August 30, 2014 to January 17, 2015, respectively.

50.     "Property damage" was first discovered at the Project in June 2020.

51.     The January 17, 2015 cancellation date of the second Policy occurred one month before Ring's work at the Project was completed on February 13, 2015; two months before the Project "reached substantial completion" on March 6, 2015 per the allegations in the Underlying Arbitration; ten months before the final certificate of occupancy was issued; and more than five years before "property damage" was discovered in June 2020.

52.     Based on the foregoing, "property damage" did not occur during Scottsdale's policy periods.

53.     Because "property damage" did not occur during the policy periods, Scottsdale does not owe a duty to defend or indemnify Corona in the Underlying Action.

54.     Similarly, because "property damage" did not occur during the policy periods, Scottsdale does not owe a duty to defend or indemnity Ring in the Underlying Arbitration.

        WHEREFORE, Scottsdale respectfully requests this Court enter judgment in its favor and against Corona and Ring (i) declaring that Scottsdale does not owe a duty to defend or indemnify Corona in the Underlying Action; (ii) declaring that Scottsdale does not owe a duty to defend or indemnify Ring in the Underlying Arbitration; and (iii) granting such other and further relief as this Court may deem just and proper under the circumstances.

18

## COUNT II
### (Corona Is Not An Insured)

55.     Scottsdale incorporates by reference Paragraphs 1 to 46 as if fully set forth herein.

56.     The Policies' Declarations list "Corona Construction Candelario Corona /DBA" as the Named Insured and the form of business as "individual."

57.     The "Who Is An Insured" section states if you are designated in the declarations as "[a]n individual, you and your spouse are insureds, **but only with respect to the conduct of a business of which you are the sole owner."**  (emphasis provided).

58.     It further provides "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

59.     The "Who Is An Insured" section states "your 'employees'," are also insureds "but only for acts within the scope of their employment by you or while performing duties **related to the conduct of your business**." (emphasis provided).

60.     The Policies state that "you" or "your" in the Policies refers to the Named Insured in the Declarations.

61.     Candelario is the Named Insured to the Policy, not Corona.

62.     The Policies provide coverage for Candelario for the conduct of a business of which he is the sole owner.

63.     Corona, and not Candelario, signed the Sub-Subcontract Agreement with Ring as the "President" of "Corona Construction."

64.     Upon information and belief, Candelario was not involved in the Project.

65.     Further, Corona was not identified as an employee of Candelario in an underwriting audit of Candelario's business.

19

66.     Accordingly, Corona does not qualify as an insured under the Policy.

67.     Because Corona is not an insured under the Policies, Scottsdale does not owe a duty to defend or indemnify him in the Underlying Action.

WHEREFORE, Scottsdale respectfully requests this Court enter judgment in its favor and against Corona (i) declaring that Scottsdale does not owe a duty to defend or indemnify Corona in the Underlying Action; and (ii) granting such other and further relief as this Court may deem just and proper under the circumstances.

<u>**COUNT III**</u>
**(Ring Is Not An Additional Insured)**

68.     Scottsdale incorporates by reference Paragraphs 1 to 46 as if fully set forth herein.

69.     The Policies do not contain an Additional Insured Endorsement that expressly name Ring as an Additional Insured.

70.     The Additional Insured Endorsement "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU," provides in pertinent part:

> A.     **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.**     Your acts or omissions; or
>
> **2.**     The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.
>
> However, the insurance afforded to such additional insured:
>
> **1.**     Only applies to the extent permitted by law; and

**2.**     Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

71.     You" and "your" under the Policies "refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."

72.     "Corona Construction Candelario Corona /DBA" is the Named Insured under the Policies.

73.     The Additional Insured Endorsement provides that an Additional Insured is "any person or organization for whom [Candelario is] performing operations when [Candelario] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Candelario's] policy."

74.     Upon information and belief, Candelario did not perform operations at the Project nor did Candelario agree in writing that Ring was to be added as an Additional Insured to the Policies.

75.     Rather, Corona signed the Ring Sub-Subcontract as the "President" of "Corona Construction" and the Underlying Action named Luis Corona individually and doing business as Corona Construction as a defendant.  Corona is not a Named Insured under the Policies, nor does he qualify as a Named Insured.

76.     Accordingly, Ring is not an Additional Insured under the Policies.

77.     Alternatively, if Ring qualifies as an Additional Insured, which Scottsdale denies, Ring's status as an Additional Insured terminated in July 2014 when Corona's operations for Ring was completed.

78.     The Project was substantially completed on March 6, 2015 and "property damage" was discovered in June 2020.  Therefore, there is no potential coverage for Ring as an Additional

Insured because any "property damage" occurred months to years after Corona's operations for Ring were completed.

79.     Therefore, Scottsdale does not owe a duty to defend or indemnify Ring in the Underlying Arbitration.

WHEREFORE, Scottsdale respectfully requests this Court enter judgment in its favor and against Ring (i) declaring that Scottsdale does not owe a duty to defend or indemnify Ring in the Underlying Arbitration; and (ii) granting such other and further relief as this Court may deem just and proper under the circumstances.

DATED:  August 30, 2024                Respectfully Submitted,

                                       SCOTTSDALE INSURANCE COMPANY

                                       By: _____/s/ Cassandra J. Neal_____
                                                   One of its Attorneys

Cassandra J. Neal, Attorney No.: 6324407
Weber Gallagher Simpson Stapleton Fires & Newby LLP
33 N. LaSalle Street, Suite 1900
Chicago, Illinois 60602
cneal@wglaw.com